CENTRAL WAREHOUSE CO. *v.* UNITED STATES (No. 2779)[1]

PARAGRAPH 1022, TARIFF ACT OF 1922—"COMMON  *  *  *  JAPAN  *  *  * STRAW MATTING."

Upon the authority of *Central Warehouse Co.* v. *United States,* 12 Ct. Cust. Appls. 563, T. D. 40785, rugs made of rice straw in Japan were properly assessed under paragraph 1022, Tariff Act of 1922, as "all other floor coverings not specially provided for," rather than as "Common  *  *  *  Japan  *  *  *  straw matting."

---

[1] T. D. 41914.

United States Court of Customs Appeals, December 14, 1926

APPEAL from Board of United States General Appraisers, Abstract 51894

[Affirmed.]

*Gerry & Wakefield* (*James L. Gerry* and *Edwin R. Wakefield* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.

*John Hanson Kennard, amicus curiae.*

[Oral argument October 21, 1926, by Mr. Wakefield, Mr. Igstaedter, and Mr. Kennard]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, and HATFIELD, Associate Judges, BLAND, Associate Judge, participating in the decision by agreement of counsel

HATFIELD, Judge, delivered the opinion of the court:

Merchandise, consisting of rugs made of rice straw and bound with a cotton warp, known in the trade and commerce of the United States, as "Japan rice straw rugs" and as "rice straw rugs," was assessed for duty by the collector under paragraph 1022 of the Tariff Act of 1922, at 40 per centum ad valorem as "floor coverings not specially provided for."

Paragraph 1022 reads as follows:

PAR. 1022. Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, made wholly of cotton, flax, hemp, or jute, or a mixture thereof, 35 per centum as valorem; all other floor coverings not specially provided for, 40 per centum ad valorem.

The importer claimed in its protest that the merchandise was dutiable at 3 cents per square yard under the first provision of paragraph 1022 for "Common China, Japan, and India straw matting, and floor coverings made therefrom."

On the trial below it was stipulated that the merchandise in question, represented by collective Exhibit I, is the same in all material respects as that involved in the case of *Central Warehouse Co.* v. *United States*, 12 Ct. Cust. Appls. 563, T. D. 40785. The record in that case was introduced in evidence. Additional evidence was introduced by the importer, consisting of the testimony of Herbert S. Wheeler and George E. Mallinson, who testified in the former case for the importer, and three other witnesses who did not appear in that case, and further cross-examination of three of the witnesses who appeared and testified therein for the Government. The trial court overruled the protest and the importer appealed.

It is contended by the appellant: "That there was no general, definite, and uniform use of the words 'common, Japan straw matting' in the trade and commerce of this country at and prior to the passage of the Tariff Act of 1922, or at any other time;" that this fact has been

established by its witnesses and sustained by the witnesses for the Government; and that, as the merchandise in question is made in Japan of rice straw, and, as it is bought and sold in the United States as "Japan rice straw rugs" or "as rice straw rugs," and, as it is the only merchandise of the kind made in Japan of true straw, it is dutiable under the provision for "Common * * * Japan, * * * straw matting, and floor coverings made therefrom."

In the case of *Central Warehouse Co.* v. *United States, supra,* we said:

It is apparent from prior legislation on the subject that Congress recognized that there were floor coverings made in Japan, or elsewhere, and known in the trade and commerce of the United States as Japan straw matting or Japanese straw matting, which were not made of straw, if the word straw is given its scientific meaning.

The opinion of the court was concisely stated in the head notes which read as follows:

The provisions of tariff laws are directed to the men engaged in commerce and trade in the United States, and are to be interpreted according to *their* understanding at the time of the enactment of the tariff act.

The familiar rule that a tariff term may be shown to have a commercial meaning different from its common meaning applies to descriptive as well as denominative terms.

The provision in paragraph 1022, tariff act of 1922, for common Japan straw matting was not intended to refer to all straw matting made in Japan, but to only such merchandise as was known in the trade and commerce of the United States as *common* Japan straw matting, at the time of the passage of the act, and may include matting made of material other than straw. Proof that Japanese rice-straw rugs were the only floor coverings made in Japan of straw established a prima facie classification under the provision; but it is overcome by proof that they were never known by the trade and commerce of this country as common Japan straw matting but by other names, and that matting made of entirely different material was so known. Their classification under the paragraph as floor coverings not specially provided for was correct.

We there expressed the opinion that it was not intended by the Congress to make all Japan straw matting and floor coverings made therefrom dutiable under the first provision of paragraph 1022. It is evident from the language thereof that the provision was intended to be limited in its operation.

If we should accept the testimony of the witnesses for the appellant and the arguments of counsel as final and conclusive upon the question of the use of the phrase "common Japan straw matting," and hold that such phrase had never been used to describe merchandise in the trade and commerce of the United States and that, as a matter of fact, there was no such merchandise known to the trade, in what manner and to what extent would such a conclusion be helpful to the appellant? We had assumed in our prior decision that the Congress was legislating with knowledge of the existence of such merchandise and, accordingly, held that evidence which tended to prove that the

merchandise was made in Japan, that it was made of rice straw, and that it was the only floor covering made in Japan of true straw was *probably* "sufficient to establish *prima facie* that the merchandise was *common Japan straw matting* or floor coverings made therefrom." (Italics not quoted.) However, if there is no such merchandise known in the trade and commerce of the United States, upon what evidence in the case or upon what theory could it be argued that imported rice-straw rugs made in Japan are dutiable under this provision?

There is evidence in the case that there is a matting made in Japan and known in the trade and commerce of the United States as "common Japan straw matting" and that it differs in material, manufacture, and quality from the rice-straw rugs in question. Upon the issue of fact the trial court found in favor of the Government. We are unable to say that its findings are contrary to the weight of the evidence.

The judgment is *affirmed*.