## KNAUTH v. UNITED STATES (No. 137).[1]

WALL POCKETS.—MANUFACTURES OF PAPER.

　Flat cardboards, of different sizes and shapes, upon which lithographic prints have been mounted, and that have been imported in a "knocked-down" condition, but complete in themselves and ready to be assembled and used as wall pockets, are not to be deemed lithographic prints and dutiable as such; they have a new name and new use and were dutiable under paragraph 407, tariff act of 1897, as manufactures of paper.

United States Court of Customs Appeals, April 11, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6910 (T. D. 29762).

　[Reversed.]

　Brown & Gerry for appellants.

　D. Frank Lloyd, Assistant Attorney General (Martin T. Baldwin on the brief), for the United States.

　　Before MONTGOMERY, SMITH, BARBER, and DE VRIES, Judges.

　BARBER, Judge, delivered the opinion of the court:

　The merchandise involved in this case consists of paper cardboard upon which has been printed or pasted what are conceded to be lithographic prints, ornamental in design and color.　It is divided into three classes: (1) Flat cardboards of different sizes and shapes, intended to be put together to form wall pockets and containing cheap attachments, such as thermometers, calendars, mirrors, pincushions, etc.; (2) the same as class 1, except that there were no attachments to the same; and (3) like flat pieces of cardboard of different sizes, not intended for use as wall pockets and free of attachments of any kind.

　These wall pockets, counsel agree, were imported in a "knocked-down" condition, from which agreement and from the record we understand that they are complete and in condition to be assembled when imported.　They are each composed of two pieces of cardboard upon which appears the lithographic printing; the back piece is the larger, has holes punched or cut therein suitable and designed to receive corresponding flaps, wings, or portions of the front piece that are shaped to be inserted therein and which hold the front and back together.　This attachment of the front to the back piece results in a small receptacle being formed which is designated as a pocket, and hence the term "wall pocket" arises.

　The collector assessed the merchandise for duty as "lithographic prints from stone, zinc, aluminum, or other material," under paragraph 400 of the tariff act of 1897, the pertinent provisions of which are as follows:

　* * * lithographic prints from stone, zinc, aluminum, or other material, on cardboard or other material, exceeding twenty one-thousandths of one inch in thickness, six cents per pound; * * *

　No question is made that if assessable thereunder the rate of duty is proper.　The importers claim that the merchandise is dutiable as "manufactures of paper, or of which paper is the component material

---

[1] Reported in T. D. 31499 (20 Treas. Dec., 714).

of chief value," under paragraph 407 of the same act, or alternatively as "printed matter," under paragraph 403. These respective paragraphs read as follows:

407. Manufactures of paper, or of which paper is the component material of chief value, not specially provided for in this act, thirty-five per centum ad valorem.

403. Books of all kinds, including blank books and pamphlets, and engravings bound or unbound, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing not specially provided for in this act, twenty-five per centum ad valorem.

The Board of General Appraisers sustained the protests as to said class 1 and overruled the same as to the other two classes. The United States took no appeal. The importers appealed from the judgment of the board as to classes 1 and 2, but took no appeal as to class 3. The issues before us are whether the wall pockets mentioned in class 1 are dutiable under paragraph 407 or 403, and whether those mentioned in class 2 are dutiable under paragraph 400 or alternatively under paragraph 407 or 403.

The board thought the protests should be overruled as to all three classes of the merchandise; but, in view of the decision of the Circuit Court for the Southern District of New York in the case of Knauth, Nachod & Kuhne *v.* United States (155 Fed. Rep., 144), felt constrained to sustain the protests as to class 1. It is agreed that the merchandise described in class 1 is like that involved in the last-mentioned case.

The United States in the hearing before the board introduced a large number of witnesses whose evidence tended to show the articles in question were commercially known as lithographic prints; this was met by witnesses on behalf of the importers whose evidence tended to show that there was no such commercial designation of the merchandise, and the greater part of the record and of the briefs and arguments is devoted to this phase of the case.

The Board of General Appraisers in their decision said, relating to this contention, that—

Many witnesses were examined in this proceeding, and the Government has endeavored to prove by their testimony that the term "lithographic print" had a well-known, uniform, and general trade meaning, and that it included articles of the kind here in question. A careful reading of all the evidence in the case convinces us that there is no uniform and general trade understanding covering the term "lithographic print." It may be remarked, however, that it would seem impossible to establish terminology for a provision framed in the language of paragraph 400. The provision reads "lithographic prints from stone, zinc, aluminum, or other material." The expression is purely descriptive and not denominative, and we must therefore construe the provision according to the ordinary meaning of the words there used.

We have also carefully examined the record and concur in the conclusion of the board upon this issue.

As to the claim of the importers that the articles are dutiable as "printed matter" under paragraph 403, we think, as did the board, that these articles being lithographed and lithography being a kind of printing, concerning which fact there is no controversy, if this case were to be determined by deciding whether the merchandise should be classified under paragraph 400 or under paragraph 403 it must be held

that the provisions in paragraph 400 for "lithographic prints from stone, zinc, aluminum, or other material, on cardboard or other material," is more specific than the provisions in paragraph 403 for "printed matter, * * * not specially provided for," and that the merchandise here, being lithographic prints of the kind specified in paragraph 400 and upon cardboard that is within the provisions of that paragraph, it would be dutiable thereunder rather than under paragraph 403.

The question of whether they are dutiable as lithographic prints or as manufactures of paper, or of which paper is the component material of chief value, not specially provided for, is more perplexing.

The question of chief value was not made an issue before us. There is no finding of the board on that point, but the record shows that the importers testified unequivocally that in all these wall pockets the paper was the chief value.

The wall pockets themselves are aptly described by the word novelties. Indeed, several witnesses so characterized them; some also referred to them as lithographic novelties, and others, apparently having in mind similar articles advertising something, referred to them as advertising novelties. By their fancy, decorated appearance, which is to a certain degree ornamental, they are designed to be attractive, and in that they contain a receptacle for small articles, they are also useful. The front and back pieces of the wall pockets before being prepared to fit each other are similar in some respects to the articles involved in United States v. Tate (1 Ct. Custs. Appls., 434), heard at the December (1910) session of this court, in which case opinion is concurrently filed. The merchandise there is held dutiable as lithographic prints. It will be seen, however, that those prints, although intended to be used as box tops, in fact had never assumed the shape or form of a box top, but were flat pieces of surface-coated paper lithographically printed, and the case does not find them to be susceptible of any other use.

The articles here are imported in a "knocked-down" condition, ready to put together, each piece designed and adapted to fit its companion, and when assembled the two pieces make the completed article which has for its specific name "wall pocket."

It is urged by the United States that when imported these wall pockets are in the shape of flat pieces of lithographically printed cardboards and should be assessed as such. But it has been decided that articles designed and suitable to be assembled to constitute a new product when imported together by the same person at the same time are properly classifiable for duty as the new product. Isaacs v. Jonas (148 U. S., 648); Park & Tilford v. United States, supra, p. 34 (T. D. 31006).

The two parts of each wall pocket appear to have been partially attached before importation, counsel on both sides so assume, and we dispose of the case, so far as that feature of it is concerned, in the same way it would be disposed of had these wall pockets been completely united and in shape for use before being imported instead of being in a "knocked-down" condition.

Are these wall pockets manufactured articles? They are composed of two pieces of paper cardboard united in such a manner as to form a receptacle. They are also composed of lithographic prints or of such prints mounted on paper cardboards, which is the same thing. They have been cut to shape and form, designed to produce, when united, certain appearances and results, one of which is a pocket, and when united and placed in position the intended appearances and results are produced. The wings, flaps, or other parts of each front piece have been prepared to enter the holes or perforations of the back piece designed to receive the same. Neither part appears to have any use after being so manipulated and treated except when joined to the other, and when united they serve a definite and new purpose and one which as lithographic prints or pieces of cardboard they could not serve until manipulated.

The amount of labor required for the processes referred to is undoubtedly small, but the articles themselves do not appear to be of large value, and the stability of the construction of the wall pockets is not great.

The work required to produce an article need not be large, and a small amount often changes the classification. Saltonstall *v.* Wiebusch (156 U. S., 601).

It is true that the completed wall pocket retains the ornamental and attractive features of the lithographic prints, but it has become a new article, taken on a new name, and is subject to a new use.

It is urged in argument that this use is inconsequential, and that though the completed articles are wall pockets, their use in that capacity is an incident to the main purpose of the lithographic prints; but we can not say as a matter of law that this is so. For aught that appears, the useful feature of the pocket may contribute equally or more to the salable quality of the article than do the lithographic prints thereon.

The constituent parts of these articles have passed beyond the stage of lithographs; the treatment to which the back pieces have been subjected has in some degree mutilated the surfaces of the prints thereon, and we hold that the completed wall pocket is a manufactured article. Hartranft *v.* Wiegman (121 U. S., 609); Rossman *v.* United States supra, p. 280 (T. D. 31321); Knauth *v.* United States (155 Fed. Rep., 144); Kraut *v.* United States (142 Fed. Rep., 1037).

It already appears that paper is the component material of chief value, and it follows that the merchandise is dutiable under paragraph 407 of the act of 1897.

That part of the judgment of the Board of General Appraisers appealed from is therefore affirmed as to the merchandise involved in class 1 and reversed as to the merchandise involved in class 2, as hereinbefore described, and reliquidation ordered in accordance with the views herein expressed.

MONTGOMERY, Presiding Judge, and SMITH and DE VRIES, Judges, concur.