UNITED STATES *v.* CANADIAN NATIONAL RAILWAYS (No. 4343)[1]

[1] C. A. D. 202.

United States Court of Customs and Patent Appeals, March 23, 1942

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Richard F. Weeks*, special attorney, of counsel), for the United States.

*Lawrence A. Harper* (*Abraham Gottfried* of counsel) for appellee.

[Oral argument January 5, 1942, by Mr. Weeks and Mr. Harper]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

In this case, merchandise conceded to be lithographically printed tourist literature of *bona fide* foreign authorship, was imported at the port of Los Angeles and assessed for duty by the Collector of Customs at the rate of 30 cents per pound under paragraph 1406 of the Tariff Act of 1930, as lithographs, not exceeding twelve one-thousandths of one inch in thickness.

The pertinent portions of said paragraph are as follows:

PAR. 1406. Pictures, calendars, cards, labels, flaps, cigar bands, placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except boxes, views of American scenery or objects, and music, and illustrations when forming part of a periodical or newspaper, or of bound or unbound books, accompanying the same), not specially provided for, shall be subject to duty at the following rates: * * *; all articles other than those hereinbefore specifically provided for in this paragraph, not exceeding twelve one-thousandths of one inch in thickness, 30 cents per pound * * *.

The importer, appellee here, claimed in its protest that the merchandise was properly dutiable at 7½ or 12½ per centum ad valorem, under paragraph 1410 of the said tariff act as modified by the trade agreement with Canada, T. D. 49752, 74 Treas. Dec. 235.

That paragraph of the tariff act reads in part as follows:

PAR. 1410. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem: *Provided*, That * * *; books of paper or other material for children's use, printed lithographically or otherwise, not exceeding in weight twenty-four ounces each, with reading matter than other letters, numerals, or descriptive words, 15 per centum ad valorem; booklets, printed lithographically or otherwise, not specially provided for, 7 cents per pound; * * *

The said modification of paragraph 1410 is as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 1410 | Tourist literature containing historical, geographic, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States: If of bona fide foreign authorship. | 7½% ad val. |
|  | All other_____ | 12½% ad val. |
| 1410 | Drawings, engravings, photographs, etchings, maps, and charts, containing, additional text conveying historical, geographic, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States. | 12½% ad val. |

The case was tried in the City of Los Angeles before the United States Customs Court, and submitted for decision upon a stipulation which appears in the transcript of record, omitting the immaterial portions thereof, as follows:

(1) That the merchandise, covered by the protest enumerated above, and represented by Exhibit #1* hereto annexed, was *authoredized* by Mr. J. J. Thornton, a Canadian resident and citizen, and consists of tourist literature containing historical, geographical, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States. The exhibit attached hereto is a sample of the imported merchandise and is lithographed. [Italics added.]

The exhibit is a folder advertising the Canadian National Railways. It is made attractive by color and reproductions of interesting photographs. It contains maps, timetables, outlines for tours, fare rates, etc., and very well written historical and geographical information for those who might tour Northwestern Canada and visit while there Jasper National Park, the Canadian Rockies and the fjords of the West Coast.

Upon the stipulated facts and the exhibit, the said court, Second Division, sustained the protest "under authority of *United States* v. *American Railway Express Co.*, 17 C. C. P. A. [Customs] 10, T. D. 43317" and rendered judgment as follows:

It is hereby ordered, adjudged, and decreed that the protest claiming in effect that the merchandise assessed for duty as lithographs not exceeding 12/1000 of an inch in thickness, at the rate of 30 cents per pound under paragraph 1406 of the Tariff Act of 1930, to be dutiable at only 7½ percent ad valorem under paragraph 1410 of said act and the Trade Agreement with Canada (T. D. 49752) as printed matter consisting of tourist literature containing historical, geographic, time table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States, and of bona fide foreign authorship, is sustained.

From the judgment this appeal was taken.

The only question to be decided by us is whether the involved folders, conceded to be articles composed wholly of paper lithographi-

cally printed, are properly dutiable under said paragraph 1410 as modified by the said trade agreement with Canada.

Appellant contends that tourist literature lithographically printed was dutiable under paragraph 1406 and not under paragraph 1410, at the time the trade agreement became effective. If this contention is correct the judgment appealed from must be reversed.

Appellee contends that the provision of paragraph 1410, under which the merchandise was held to be dutiable by the trial court, is more specific than the provision of paragraph 1406 under which it was classified by the collector.

No question has been raised as to whether or not the involved folders are of *bona fide* foreign authorship, although a reading of the stipulation, as it appears in the record, seemingly might bring up such a question. The original stipulation has not been brought to our attention. Whether the word "authoredized" as it appears in the stipulation, *supra*, was intended to mean that the folders were *authorized* by Mr. Thornton or, that he was the author thereof, it is impossible to say. The trial court states that the folders were "authored" while in the brief of the Government the stipulation as there printed states that the merchandise was "authorized" by Mr. Thornton. We mention this anomaly to call attention to the necessity of making clear trial records, more careful preparation of records on appeal and better proofreading. Mere authorization for the compilation of the matter contained in the folders, or authorization for their publication, would not be a sufficient basis to hold that the imported merchandise is of *bona fide* foreign authorship.

We assume, because of the theory on which the issue was tried and decided by the trial court and briefed here, that the merchandise is of *bona fide* foreign authorship.

Lithographing is a particular method of printing by means of which there is impressed upon a receiving material, ordinarily some form of paper, words, pictures, and the like. The art of printing obviously embraces other methods. That tourist literature, not lithographically printed, is produced and distributed, is a matter of common knowledge. Such literature when imported would appear to be properly dutiable under the provisions of said paragraph 1410. That is the kind of tourist literature which in our opinion was intended to be described in the said modification of paragraph 1410.

The exact issue presented by this appeal seems to be novel. There are, however, decisions of this court which concerned the classification of lithographically printed matter. In the case of *Rotograph Co.* v. *United States*, 1 Ct. Cust. Appls. 82, T. D. 31106 (19 Treas. Dec., 1220) the imported merchandise consisted of pictorial post cards and had been assessed for duty by the collector at 25 per centum ad valorem

as printed matter not specially provided for under paragraph 403 of the tariff act of 1897, which reads:

> Books of all kinds, including blank books and pamphlets, and engravings bound or unbound, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing not specially provided for in this act, twenty-five per centum ad valorem.

The importer in its protest claimed the merchandise to be specifically provided for as lithographic prints under paragraph 400 of that tariff act. This court reversed the decision of the Board of General Appraisers (now the United States Customs Court) and held that the post cards were properly dutiable as claimed by the importer.

In the case of *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499 (20 Treas. Dec., 714) the involved goods were paper cardboard upon which had been pasted or printed lithographic prints. The collector classified the goods as lithographic prints under paragraph 400 of the tariff act of 1897 and the importer claimed them to be properly classifiable as "manufactures of papers, or of which paper is the component material of chief value" under paragraph 407 of the same act or alternatively as "printed matter" under paragraph 403. In that case while this court did not base its decision on the competition between said paragraphs 400 and 403, it stated as follows:

> As to the claim of the importers that the articles are dutiable as "printed matter" under paragraph 403, we think, as did the board, that these articles being lithographed and lithography being a kind of printing, concerning which fact there is no controversy, if this case were to be determined by deciding whether the merchandise should be classified under paragraph 400 or under paragraph 403 it must be held that the provisions in paragraph 400 for "lithographic prints from stone, zinc, aluminum, or other material, on cardboard or other material," is more specific than the provisions in paragraph 403 for "printed matter, * * * not specially provided for," and that the merchandise here, being lithographic prints of the kind specified in paragraph 400 and upon cardboard that is within the provisions of that paragraph, it would be dutiable thereunder rather than under paragraph 403.

The case of *United States* v. *Tate*, 1 Ct. Cust. Appls. 434, T. D. 31501 (20 Treas. Dec., 726) was decided under the Tariff Act of 1897. The merchandise consisted of thin flat pieces of surface-coated paper lithographically printed to be made into box covers. The collector classified the goods as lithographic prints not specially provided for under paragraph 400 of said tariff act and the importer claimed them to be surface-coated papers, printed, not specially provided for under paragraph 398 of the same act. While this court, on the issue there presented, held that the goods might be classified under either of the paragraphs, and therefore under the provisions of section 7 of the act of 1897, held them properly classifiable under paragraph 400 at the higher rate set forth therein, it stated as follows:

> It might with much force be urged that the term lithographic prints in paragraph 400 is, in view of the apparent design of Congress as manifested thereby

to include therein all the lithographic prints enumerated whether upon paper or cardboard, a narrower provision than the term surface-coated papers, printed, in paragraph 398; and that the word *printed* in paragraph 398 refers to printing generally, while paragraph 400 refers specifically to the products of lithographic printing.

In the case of *Overton & Co.* v. *United States,* 2 Ct. Cust. Appls. 422, T. D. 32172 (22 Treas. Dec., 82) the importation consisted of sheets of surface-coated paper embellished with designs lithographically printed. It was assessed for duty under paragraph 412 of the tariff act of 1909 as articles lithographically printed not specially provided for in the paragraph. The importer claimed it should have been classified under paragraph 411 of the same act as "Papers with coated surface or surfaces, not specially provided for * * * or if embossed or printed * * *." This court in its opinion, concerning paragraph 412, stated as follows:

> We think a careful reading of the entire paragraph [412] indicates that Congress intended to include thereunder all lithographically printed paper, unless it is specifically otherwise provided for elsewhere, and that the particular articles first mentioned in the paragraph are not words of limitation in view of the treatment given to the whole subject matter of lithographic prints.

It is to be noted that every case which has been before this court involving articles lithographically printed, such articles were held to be dutiable as such under the paragraph pertaining generally to lithographically printed articles.

While the present issue was not before the court in those cases, we are of opinion that the issue here does not differ so much from the issues in those cases as to warrant us in holding that the present merchandise is not properly classifiable under said paragraph 1406.

There have been some changes from the predecessors of paragraph 1406 of the present act but they do not substantially change what appears to have been the continued clear intent of the Congress to group into a separate classification all lithographically printed articles unless they have been specifically provided for elsewhere.

In order to so specifically provide for such articles we think that the term "lithographically printed" or words of similar import would have to be employed or that the imported article even though so printed would have to be so clearly defined as to constitute it a different article in a tariff sense from those embraced in paragraph 1406.

We do not think the expression "printed matter" * * * "not specially provided for" in paragraph 1410 is to be construed to mean such printed matter as is involved here. It certainly is not as specific as paper articles "lithographically printed" * * * "not specially provided for," for the reason that the latter is included in the former as a particular kind of printing.

In the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, 378, T. D. 42031, which arose under the Tariff Act of 1922, this court stated as follows:

Paragraph 1310 of the present tariff act shows a legislative intent to establish a new test for classification, that is, *foreign authorship*, for certain articles, and to make specific and definite provision as to others. It is a revision, a substantial reenactment, of part of paragraph 329, and includes merchandise named in other paragraphs of that act. Our first three subdivisions of paragraph 1310 cover substantially the same articles mentioned in the first sentence of paragraph 329. Blank books, slate books, engravings, photographs, etchings, maps, and charts found in that sentence have by Congress been excluded from subdivisions (1) and (2) and placed in subdivision (3), leaving only in subdivision (1) such things as are susceptible of authorship in the sense that word is ordinarily used.

That statement does not mean that lithographically printed matter not specially provided for of *bona fide* foreign authorship was specifically provided for in paragraph 1310 of the Tariff Act of 1922. Paragraph 1306 of the same act provided for such articles. Since, in our opinion, the expression "lithographically printed" is more specific than the term "printed matter," it is of no consequence in the instant case whether or not the printed matter is of *bona fide* foreign authorship.

In the modification of said paragraph 1410, by the said trade agreement, "tourist literature" was first mentioned *eo nomine*. That fact, however, is of no importance here for the reason that that portion of the said agreement modifying paragraph 1410 was clearly intended to change the rate of duty only on articles already embraced within the scope of said paragraph.

Furthermore it seems to us that if the Congress had intended lithographically printed matter to be included in such "printed matter" as is provided for in paragraph 1410, it would not have expressly included therein lithographically printed matter consisting of views of landscapes, articles for children's use, and that in the form of booklets. We are of opinion from a reading of the paragraph, that Congress must have intended that "printed matter" as it appears in that paragraph was to exclude all matter lithographically printed except where it was expressly included it being specially provided for in paragraph 1406.

It is not disputed that if the folders are not properly classifiable under paragraph 1410 they should be held to be classifiable under paragraph 1406. Therefore in view of what has been said herein, we sustain the contention of the Government and hold that, at the time the said trade agreement became effective, tourist literature lithographically printed was dutiable under said paragraph 1406.

The issue of the instant case was not present in the case of *United States* v. *American Railway Express Co. et al.*, 17 C. C. P. A. (Customs) 10, T. D. 43317. In that case the appeal concerned the proper

classification of paper-bound books and pamphlets issued by the Canadian National Railways Co., for free distribution and intended to increase interest in travel on its railroad. The competing paragraphs were 1310 and 1528 of the Tariff Act of 1922. Paragraph 1310 is the predecessor of paragraph 1410 of the present tariff act and provided, *inter alia*, for a certain rate of duty on books and pamphlets if of *bona fide* foreign authorship. Paragraph 1528 provided, among other things, for free entry of "publications of individuals for gratuitous private circulation, not advertising matter." In that case this court merely held the involved merchandise to be advertising matter and "dutiable as printed matter of *bona fide* foreign authorship." Clearly the decision there can have no application here.

For the reasons herein set out the judgment of the United States Customs Court is *reversed.*