## ARTHUR v. CUMMING ET AL.

1. The term "burlaps," used in the revenue statutes, does not in commercial usage, by which descriptive terms applied to articles of commerce must be construed, mean "oil-cloth foundations," or "floor-cloth canvas."
2. "Oil-cloth foundations" and "floor-cloth canvas" are in commerce convertible terms for designating the same article; and it is clear that Congress intended that they should be so understood.
3. While the act of June 6, 1872 (17 Stat. 232), provides that an import duty of thirty per cent *ad valorem* shall be levied "on all burlaps and like manufactures of flax, jute, or hemp, or of which flax, jute, or hemp shall be the component material of chief value, except such as may be suitable for bagging for cotton," the fact that such burlaps are suitable, and can be and are used for oil-cloth foundations, or for any other purpose except bagging for cotton, is entirely immaterial, and does not subject them to an *ad valorem* duty of forty per cent.

ERROR to the Circuit Court of the United States for the Southern District of New York.

*Mr. Assistant Attorney-General Edwin B. Smith* for the plaintiff in error.

*Mr. George S. Sedgwick* and *Mr. Stephen G. Clarke, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The defendants in error were the plaintiffs in the court below. They claim that they were the importers of certain burlaps, upon which the duty chargeable by law was thirty per cent *ad valorem;* that the collector insisted the goods were "oil-cloth foundations," upon which the duty is forty per cent *ad valorem*, and compelled them to pay accordingly. They paid under protest, and brought this suit to recover back the alleged excess of ten per cent. Under the instructions of the court, a

verdict and judgment were given in their favor. The collector thereupon sued out this writ of error.

The case arises under the fourth section of the act of June 6, 1872 (17 Stat. 232), and turns upon the construction to be given to that section with respect to the particulars here in controversy.

That section declares, that after the 1st of August, 1872, in lieu of the duties theretofore levied upon the articles mentioned in the section, there should be paid upon those articles imported from foreign countries the following duties; to wit:—

"*On all burlaps* and like manufactures of flax, jute, or hemp, or of which flax, jute, or hemp shall be the component material of chief value, except such as may be suitable for bagging for cotton, thirty per centum *ad valorem*. On all oil-cloth foundations or floor-cloth canvas, made of flax, hemp, or jute, or of which flax, hemp, or jute shall be the component material of chief value, forty per centum *ad valorem*. On all bags, cotton-bags, and bagging, and all other like manufactures not herein provided for, except bagging for cotton, composed wholly or in part of flax, hemp, jute, gunny-cloth, gunny-bags, or other material, forty per centum *ad valorem*."

All the testimony produced upon the trial is embodied in the bill of exceptions. It was introduced by the plaintiffs. The United States adduced none.

The rule to be followed in the construction of revenue statutes in cases like this is well settled in this court. It is, that the descriptive terms applied to articles of commerce shall be understood according to the acceptation given to them by commercial men in our own ports at the time of the passage of the act in which they are found. *United States* v. *Two Hundred Chests of Tea*, 9 Wheat. 230 ; *Elliot* v. *Swartout*, 10 Pet. 151 ; *Curtis* v. *Martin*, 3 How. 106.

The statute here in question declares that " on *all* burlaps and like manufactures of flax, jute, or hemp, . . . except such as may be suitable for bagging for cotton, a duty of thirty per centum *ad valorem* shall be paid."

The mercantile testimony in the record shows that the articles in question were " burlaps," that they were a " manufacture of jute," and that they were not suitable for bagging for cotton. The exception may, therefore, be laid out of view.

The language of. the statute is clear and explicit. It is, " *all* burlaps " made of jute, &c. The mercantile proof brings the case exactly within this category. The fact that the burlaps were suitable, and could be and were used for oil-cloth foundations, or for. any other purpose except bagging for cotton, is entirely immaterial. The maxim, *Expressio unius, exclusio alterius*, applies with cogent effect.

This view is conclusive, unless it is overcome by something else found in the statute.

The counsel for the United States insists that it is answered by the next category defined in the section ; which is, that " on *all oil-cloth foundations* or *floor-cloth canvas* made of flax, jute, or hemp," a duty shall be levied " of forty per cent *ad valorem.*"

Here, again, we must look to the mercantile testimony in the record. It is there stated that " *floor-cloth canvas* " is used exclusively for the manufacture of *floor oil-cloth.* " It has a harder twist, is heavier, is a more expensive article than burlaps, and is not calendered as burlaps are. . . . Floor-cloth canvas is a commercial term implying a well-known article of merchandise thus described; and a merchant, in speaking of *foundations for oil-cloths*, would be considered to refer to ' *floor-cloth canvas.*' Floor-cloth canvas is not called burlaps, nor is burlaps called *floor-cloth canvas.*"

This testimony establishes two things: first, that the terms *oil-cloth foundations* and *floor-cloth canvas*, as used in the statute, mean in commerce the same thing ; and, second, that the thing so understood is not *burlaps*, but a thing entirely distinct and different from that article.

The second clause of the statute in no wise affects the first one. There is, therefore, no just ground for maintaining that the goods imported by the plaintiffs below were dutiable as *oil-cloth foundations*, not as *burlaps.*

The researches of the counsel for the defendants in error have brought to our attention many instances in which two phrases with the like conjunction between them have been used to designate the same thing. In those cases it was obviously done to make clear and certain the meaning of the legislature, and to leave no room for doubt upon the subject. Such

in this section seems to have been the purpose of Congress. The phrase *oil-cloth foundations* would not necessarily import the article known in commerce as *floor-cloth canvas;* nor would the phrase *floor-cloth canvas* necessarily import an article to be used for " *oil-cloth foundations.*"

Considering the juxtaposition and connection in which the two phrases are found, and letting in upon them the light of the mercantile evidence, the inference is clear that Congress used them, and intended that they should be understood, as convertible terms. This gives all the certainty and freedom from doubt which could be effected by the largest circumlocution.

It evinces unmistakably the purpose that the *floor-cloth canvas* which is known in commerce as the article used for *oil-cloth foundations* should pay a duty of forty per cent *ad valorem*. The two designations have no effect beyond this result.

This examination of the statute and the record leaves no doubt in our min's upon the questions presented for our consideration.

As the case stood before the jury, the plaintiffs were clearly entitled to a verdict. The court, therefore, properly directed the jury to find accordingly. *Shugart* v. *Allens*, 1 Wall. 359.

It would have been error to refuse so to instruct them.

*The judgment of the Circuit Court is affirmed.*