---

HAMPTON, JR., & CO. v. UNITED STATES (No. 2462).[1]

1. EVIDENCE—RELEVANCY—COMMERCIAL DESIGNATION.

Evidence of commercial designation is relevant only when it is claimed to be different from the common meaning. Proof that the merchandise is known as "asbestos shingles" does not at all prove that it is known as a shingle.

[1] T. D. 40695.

2. EVIDENCE—JUDICIAL NOTICE.

It is .the well-established rule that, in the interpretation of terms used by Congress in tariff laws, the court may call to its aid definitions given by lexicographers of the words in question.

3. CONSTRUCTION, FORMER ACTS AS AID.

A distinction once made by Congress as to tariff commodities will be presumed to continue in the absence of anything showing a. contrary legislative intention.

4. CONSTRUCTION—SIMILITUDE—FREE LIST.

Classifications can not be made under the free list by similitude.

5. SHINGLES ARE WOOD.

In the dictionaries, former tariff acts, hearings in the Senate and House on the tariff act of 1922, and in the 1921 Summary of Tariff Information by the: United States Tariff Commission, shingles are wood; and the term will be: given that meaning in free-list paragraph 1660.

6. "ASBESTOS SHINGLES, STARTERS, AND RIDGES."

Roofing material made of asbestos and cement, asbestos chief value, known as asbestos shingles, starters, and ridges, was properly classified by the collector under paragraph 1401, tariff act of 1922, as "manufactures in chief value of asbestos." It is not classifiable as shingles under free-list paragraph 1660.

United States Court of Customs Appeals, February 17, 1925

APPEAL from Board of United States General Appraisers, G. A. 8841 (T. D. 40367)

[Affirmed.]

*Walter E. Hampton* for appellants.
*William W. Hoppin*, Assistant Attorney General, for the United States.

[Oral argument Jan. 28, 1925, by Mr. Hampton and Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, and HATFIELD, Associate Judges; BLAND, Associate Judge, participating in the decision by agreement of counsel

GRAHAM, Presiding Judge, delivered the opinion of the court:

The entries in this case were four in number, made at various dates on and after September 29, 1922. Entry No. 3185 described the merchandise as 1,476 crates asbestos shingles; the corresponding invoice described the same as "starters," and "slates," of various sizes and colors. Entry No. 3659 described the merchandise as "three hundred cases asbestos sheets," and the invoice as "sheets," of various sizes. Entry No. 4221 described the merchandise as "2,662 crates asbestos shingles," and the invoice described it as "shingles," "starters," and "ridges" of various sizes and colors. Entry No. 5098 described the merchandise as "two hundred and thirty-one packages asbestos shingles," and the invoice described it as "shingles," of a certain size.

The collector classified the same for duty under paragraph 1401, tariff act of 1922, at 25 per cent ad valorem, as "manufactures in

chief value of asbestos." The local appraiser reports that the merchandise is "asbestos sheets, slates, shingles, and starters, composed of asbestos and cement. Asbestos being the component of chief value * * *." The importers protested, claiming the goods to be free of duty under paragraph 1660 as shingles or under paragraph 1515, as asbestos unmanufactured, etc., or alternatively dutiable under paragraph 1460, by similitude, or under paragraph 1459, as an unenumerated article. The Board of General Appraisers, on appeal, sustained the classification, and importers appeal.

In the assignment of errors and in their brief and argument filed herein, the appellants rely upon the alleged error in not finding the goods free of duty under paragraph 1660 aforesaid and abandon their alternative claims. These alternative claims, therefore, need not be examined.

On the hearing before the Board of General Appraisers, the appellants withdrew their claim as to the asbestos sheets covered by entry No. 3659 (transcript pp. 22–23). There is, therefore, no contention as to the classification upon said entry.

As to such of the goods as are invoiced in entries Nos. 3185 and 4221 as "starters" and "ridges," the testimony offered by the appellants below shows conclusively that these articles are commonly known as "starters" and "ridges," and are used as accessories in building asbestos shingle or slate roofs. No attempt is made to show that they are ever known, commonly or commercially, as "shingles." They can not be classed as shingles under paragraph 1460, the similitude clause, as that paragraph does not apply to the free list. It is apparent that the classification as to the so-called "starters" and "ridges" should be sustained.

This brings us to the remaining and important question in the case: Are these articles "shingles," within the meaning of the free-list provision? The paragraphs of the tariff act of 1922 involved are as follows:

1401. Asbestos, manufactures of: Yarn and woven fabrics composed wholly or in chief value of asbestos, 30 per centum ad valorem; all other manufactures composed wholly or in chief value of asbestos, 25 per centum ad valorem.

Free list.—1660. Shingles.

The samples of goods in question, invoiced as shingles, show them to be hard, rigid, slatelike sheets about one-eighth of an inch in thickness and of various shapes and colors. One type is about 12 inches square, and is finished in red or gray colors. Another type is approximately 16 inches square, finished in gray, slate, and red colors. These are called the French type. The remaining samples are called the American type, and are approximately 8 by 16 inches, and are finished in slate, red, and gray colors. Each of these have holes punched at convenient places for nails and in the French type

three corners of each sheet have been removed. The testimony shows they are used for making roof coverings in the same manner, and for like purposes, as wooden shingles.

The record is quite voluminous. The importers called several witnesses, who were interrogated about the ordinary designation of the articles of importation in question here. The appellants concede (p. 37, brief and argument), that they have not attempted to show commercial designation of the article of importation differing from its common and ordinary meaning. The evidence before the court below, on the part of the importers, shows, we think it can be fairly stated, that the merchandise is known commonly among those who deal in and with it as "asbestos shingles." Proof of commercial designation was only competent in case there was a commercial meaning to the name of the article of importation different from its common meaning.—Maddock *v.* Magone (152 U. S. 368). Therefore, the evidence offered must be considered as offered to show that the goods in question were ordinarily known as "asbestos shingles." We are unable to see the relevancy of such testimony. The question involved was whether the articles of importation were, or were not, shingles, as commonly so known. To prove that an article is commonly known as an asbestos shingle does not at all prove that it is commonly known as a shingle.

In order to have their goods admitted free, the appellants must establish that they are "shingles."—Two hundred Chests of Tea (9 Wheat. 428 [437]). Or importer might establish that the word "shingles" had a well-known, uniform, and general trade meaning, and that it included the merchandise in question.—Knauth *v.* United States (1 Ct. Cust. Appls. 422; T. D. 31499).

When attempting to interpret terms used by Congress in tariff laws, the court may call to its aid, as helps to interpretation, definitions given by lexicographers of the words in question. This is the well-established rule. When we look to the works of modern lexicographers, the word "shingle" is defined as follows:

*Webster's, 1924.*—A piece of wood sawed or rived thin and small, with one end thinner than the other, for covering roofs, etc., the thick ends of one row overlapping the thin ends of the next.

*Funk & Wagnall's, 1923.*—A thin piece of wood, usually 18 inches long and 4 or more wide, half an inch thick at one end, and tapering to less than an eighth of an inch at the other end, used like a tile or slate in covering roofs and sometimes the sides of buildings, the thick ends of one course lapping over the thin ends of the rows next below. In computation, a width of 4 inches is considered one shingle.

*Century, 1911.*—A thin piece of wood having parallel sides and being thicker at one end than the other, used like a tile or a slate in covering the sides and roofs of houses; a wooden tile. In the United States shingles are usually about 6 inches in width and 18 inches long, and are laid with one-third of their length to the weather—that is, with 12 inches of cover and 6 inches of lap.

*Murray's, 1912.*—A thin piece of wood having parallel sides and one end thicker than the other, used as a house-tile.

*Worcester's, 1908.*—An oblong piece of wood, thinner at one end than at the other, used instead of slates or tiles for covering roofs.

*Webster's Imperial, 1924.*—A thin piece of wood, having parallel sides, and thicker at one end than the other, commonly used as a roof covering, like a slate or tile. Shingles are laid with one-third of their lengths to the weather. They are usually 18 inches long, and so have 6 inches of margin.

It must be apparent, therefore, that lexicographers agree that the common meaning of the word "shingle" imports a certain manufacture of wood. ·

It is apparent from an examination of the various provisions of our tariff acts that the word "shingles," as used therein, has been used to indicate a manufacture of wood. Shingles were first provided for in the tariff act of June 6, 1872, and were carried as a separate item in the dutiable list. In the act of March 3, 1883, included within "Schedule D: Wood and manufactures of" was the item "shingles, 35 cents per one thousand." The act of October 1, 1890, included within the same schedule, a paragraph as follows: "226. White pine shingles, twenty cents per one thousand; all other, thirty cents per one thousand." In the act of August 27, 1894, in the free list, under the general heading, "Wood," appeared the item: "682. Shingles." In the act of July 24, 1897, under "Schedule D: Wood and manufactures of" appeared the item: "203. Shingles, thirty cents per thousand." In the act of August 5, 1909, shingles also appeared in said Schedule D, while in the act of October 3, 1913, in the free list, appeared this item, "647. Wood. * * * Shingles· *· * ' *."

Manifestly, during all our tariff history, up until the time of the consideration and passage of the tariff act of 1922, shingles were treated and considered by Congress as manufactures of wood. A distinction once made by Congress as to tariff commodities will be presumed to continue in the absence of anything showing a contrary legislative intention.—United States *v.* Davies Co. (11 Ct. Cust. Appls. 392; T. D. 39317).

An inspection of the proceedings of the Sixty-seventh Congress, at the time of the consideration and passage of the tariff act of 1922, demonstrates that shingles were there considered as products of wood. The Summary of Tariff Information, 1921, prepared by the United States Tariff Commission for the use of the Committee on Finance of the Senate, page 572, as to the item "shingles," says: "Shingles are among the important wood products and have given rise to considerable tariff controversy." In the hearings before the Ways and Means Committee of the House of Representatives, representatives of American lumber associations appeared, and in extensive hearings requested the imposition of an import duty on shingles to protect American shingle mills from Canadian products. (Hear-

ings, H. of R., pp. 1328–1343 and pp. 4138–4141.) Thereafter an item was inserted in the bill, under the heading "Schedule 4: Wood and manufactures of," imposing a duty of 50 cents per thousand on shingles. In the report made by the Ways and Means Committee to the House, the following was stated:

> Paragraph 408 imposes a duty of 50 cents per thousand on shingles. Shingles are now admitted free of duty, and American shingle mills in the Northwest as a result have been forced to suspend operations. The shingle industry is one of magnitude, and the adverse effect of the existing law is working a hardship on those who depend for their livelihood upon the shingle industry. The rate on shingles recommended by the committee is very moderate but it is hoped by the committee that it will result in the resumption of operations in domestic shingle mills.

When the bill went to the Senate very extensive hearings were had on this subject. (Senate hearings, pt. 6, pp. 4935–5011. Here representations were made by many witnesses that the conservation of American forests required shingles and other wood products to be free listed, and accordingly the Senate so amended the bill as to place shingles as an item in the free list. In these proceedings, and in the debates thereon in both Houses of the Congress, the subject was universally discussed with the understanding that "shingles" meant a wooden product.

On the other hand, in the hearings before the Finance Committee of the Senate (Pt. V, pp. 3983–4009, and Pt. VII, p. 5394), American manufacturers of asbestos appeared, urging protection against importation of foreign products of asbestos, including asbestos shingles, in connection with the consideration of paragraph 1401, hereinbefore quoted. In the Ways and Means Committee of the House (hearings, pp. 3410–3419) a similar showing was made. It is equally manifest that asbestos shingles were being considered by the committees of Congress as manufactures of asbestos, and under which classification all manufactures in chief value of asbestos have been classified since and including the act of October 1, 1890.

Counsel for appellants, in his very able and exhaustive argument, contends that the word "shingles" is a generic term and that anything which might be denominated a species of shingle would be included within such designation and argues therefrom that if the article were called a shingle, irrespective of any adjectival modification of it, and irrespective of the material of which it was composed, it would be properly included within the free list provision here. In support of this, he cites several authorities, which will be briefly reviewed. In United States *v.* Nordlinger (121 Fed. 690) the importation was a citron. The free-list provision was "fruits." The court held the importation free of duty. In Hurst & Co. *v.* United States (12 Ct. Cust. Appls. 81; T. D. 40021) the importation was bleached shellac and it was held free under the designation "lac." In T. D. 17579,

roasted ground coffee was held free under the free list provisions for "coffee." In Chew Hing Lung v. Wise (176 U. S. 156) tapioca flour, one of the three forms of tapioca known to commerce, was held free under the provision for "tapioca." In Shoellkopf v. United States (71 Fed. 694) liquid paraffin was held free under the provisions for "paraffin." In T. D. 24990 artificial cryolite was held free under the provision for "cryolite." In T. D. 23256 powdered indigo was held free of duty under the provision "indigo." To like effect is T. D. 20925. In United States v. Motor Car Equipment Co. (3 Ct. Cust. Appls. 77; T. D. 32355), upon which appellant principally relies, lock washers were held dutiable as "washers."

An examination of these cases discloses that in each and every instance the proof offered showed that the article which was sought to be admitted as free was commonly known, or commercially known, under the same name as the item in the free list or claimed class, and in each and every case had exactly the same qualities and characteristics; but the decisive factor in each of such cases was that the articles were known by the same name. This, in our judgment, is the controlling factor in the case at bar.

The case at bar seems to be on all fours with T. D. 26091, where the articles of import in question were rubber sponges. They were known to the trade as rubber sponges, but the court held that, not being the natural growth known to the general public, and to lexicographers, as sponges, the mere arbitrary designation of them under the name of "sponge" could not make them such within the meaning of the tariff act. The very able opinion of Sharretts, General Appraiser, in that case, was affirmed in Smith v. United States (143 Fed. 691). To a like effect is United States v. Walter (4 Ct. Cust. Appls. 95; T. D. 33371), where the article in question was shown to be commercially known as "ladder tape," and therefore was sought to be included within the section of the law covering "tapes." The court held that its mere commercial designation as "ladder tape" did not make it a tape within the ordinary meaning of that term.

And that must necessarily be the rule here. To hold that Congress intended to admit free of duty any article which could be used for a roof covering, and which might be called by the manufacturer a "shingle," would be to hold that Congress intended to admit free of duty manufactures of copper, zinc, metal, slate, stone, terra cotta, asbestos, asphaltum, rubberoid, or any other material of any kind which might be used for a similar purpose as wooden shingles and which might arbitrarily be called a certain kind of shingle.

In view of the suggestions we have hereinbefore made, we can not conclude that this was the congressional intent, and, therefore, so concluding, the judgment of the Board of General Appraisers must be, and is, *affirmed*.