MARKS BROTHERS, INC. *v.* UNITED STATES (No. 4376)[1]

United States Court of Customs and Patent Appeals, June 15, 1942

*Eugene F. Blauvelt* for appellant.
*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument April 8, 1942, by Mr. Blauvelt and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court.

This is an appeal from the judgment of the United States Customs Court, First Division, holding certain imported glass articles classi-

[1] C. A. D. 210.

fiable as manufactures of glass, not specially provided for, at .50 per centum ad valorem under paragraph 230 (d) of the Tariff Act of 1930, rather than as colored glass articles at 60 per centum ad valorem under paragraph 218 (f) of that act as assessed by the collector at the port of New York, or as brick, not specially provided for, at $1.25 per thousand or, alternatively, at 5 per centum ad valorem, but not less than $1.50 per thousand under paragraph 201 (b) of that act as claimed by the importer in its protest. However, the importer made no claim that the merchandise was dutiable as manufactures of glass under paragraph 230 (d), and the court overruled the protest without approving the collector's classification.

The paragraphs in question, so far as pertinent, read, respectively, as follows:

PAR. 230. * * * (d) All glass, and manufactures of glass, or of which glass is the component of chief value, except broken glass or glass waste fit only for remanufacture, not specially provided for, 50 per centum ad valorem.

PAR. 218. * * * (f) * * * all articles of every description not specially provided for, composed wholly or in chief value of glass, * * * colored, * * * frosted, * * * 60 per centum ad valorem.

PAR. 201. * * * (b) All other brick, not specially provided for: Not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner, $1.25 per thousand; if glazed enameled, painted, vitrified, ornamented, or decorated in any manner, 5 per centum ad valorem, but not less than $1.50 per thousand.

The articles in question are represented by exhibits 1, 2, and 3.

The merchandise of which exhibit 1 is representative is described on the invoice as "Radium Cinter in amber." The exhibit is described by appellant's witness Nathan Marks, secretary and general manager of the appellant company, as a "curved block." It is a decorative glass article, measuring approximately 9 x 9 x 1½ inches.

The articles of which exhibit 2 is representative, except as to color, are described on the invoice as "Tiles Vertica in amber," and by the witness Marks as "tiles vertica." The exhibit is a decorative glass block, approximately 8 inches square and 1½ inches thick.

Exhibit 3 is a decorative hollow glass block, blue in color, and is approximately 8 inches square and 2½ inches thick.

It appears from the testimony of the witness Marks that although the appellant company deals chiefly in "flat glass," it also deals in articles like those here involved. It further appears from the testimony of the witness that he had never had any experience "with bricks of clay or any other type of brick"; that his firm had used articles similar to exhibits 1, 2, and 3 during the last 4 or 5 years (his testimony was submitted June 7, 1940) in fireplaces, interior wall partitions, and in exterior walls of buildings in the same manner as clay brick, except that they are not used in "supporting walls"; and that his company sold such articles as "glass brick," and so advertised them in a pam-

phlet circulated among prospective purchasers. (The pamphlet was introduced in evidence as illustrative exhibit A.)

The witness Bernard R. Glaser, in the employ of appellant as salesman, estimator, and designer, testified that articles like Exhibits 1, 2, and 3 were used in both inside and outside walls of buildings, and that they were sold by appellant as "glass brick." He identified certain photographs in which it appears that articles similar to those here involved form parts of the walls of buildings. (The photographs were offered in evidence as illustrative exhibits B, C, D-1, D-2, and E.)

Appellant's witness Herman Timm testified that he was a bricklayer; that he was a member of "Bricklayers' Union, Local 9"; that under the rules of the union, he was not permitted to do any work other than that of laying bricks, although he stated that he had laid "concrete blocks" and "cinder blocks"; that he had worked with "rough brick," "face brick," and "decoration brick"; and that *purely ornamental brick which did not sustain any but its own weight are called blocks.* The witness also testified that he had laid articles like exhibits 1, 2, and 3, and that they require "a little bit stiffer" mortar than is used in the laying of clay brick. He also stated that he regarded such articles as "glass brick."

Counsel for the Government called several witnesses who were representatives of domestic manufacturers of glass articles similar to those here involved. It appears from the testimony of those witnesses that such articles are not sold by their companies as "glass brick," but are sold as "glass blocks"; that such articles are not used in place of brick made of earthy material, such as clay, because they are incapable of sustaining any considerable weight or load; that they are installed in buildings in "free-floating panels," which, according to the testimony of the witness Stanley J. McGiveran, general manager of the Insulux Products Division of "Owens, Illinois, Glass Company" of Toledo, Ohio, means a panel which "is not tied in as an integral part of the wall; so an expansion space is allowed at the three sides of the panel; and the panel has an asphalt emulsion at the sill, and we give that the name of free-floating panel. It must be that way, because if the loads of the building were to come in contact with the blocks they would shatter them." It further appears from the testimony of those witnesses that glass blocks, if used as is ordinary brick, would be shattered by the vibration, expansion, and contraction commonly occuring in buildings; that glass blocks are used in buildings for the purpose of decoration, for the transmission and fusion of light, for insulation, and for the retardation of sound; that such glass articles cannot be tied in as integral parts of a building structure, because they are not load-bearing material, and will not carry "their own load beyond a certain point."

It appears from the testimony of the witness Julian P. Staples, general manager of the Pittsburgh Corning Co., Pittsburgh, Pa, that glass blocks are about "25 times as expensive as the common ordinary brick."

There is no evidence of record that articles like those here involved are sold either as "brick" or as "glass brick" by any concern other than appellant.

On this record, the trial court held that the involved glass articles were not intended by the Congress to be included within the provision for all other brick, not specially provided for, contained in paragraph 201 (b), *supra;* that they were properly dutiable as manufactures of glass under paragraph 230 (d), *supra,* and, accordingly, overruled appellant's protest. In so holding, the court quoted several dictionary definitions of the term "brick," and also quoted from our decision in the case of *Hampton, Jr., & Co.* v. *United States,* 12 Ct. Cust. Appls. 490, T. D. 40695, wherein it was held, in view of the legislative history and the common meaning of the term "shingles," that the provision for "shingles," contained in paragraph 1660 of the Tariff Act of 1922, was intended by the Congress to be limited to wood shingles, and was not intended to cover so-called "asbestos shingles."

It is contended here by counsel for appellant that the provision for all other brick, not specially provided for, contained in paragraph 201 (b) was intended by the Congress to include all articles "known as brick, of whatever material composed, and used in the same way, for the same purposes, and in the same manner as ordinary brick"; that the term "brick," as used by the Congress in that paragraph, was not intended to be limited to brick of any particular material, size, shape, or appearance; and that as the involved articles are called "glass brick" by the importer and as they are used in the walls of buildings, they are dutiable as brick under the provisions of that paragraph.

"Brick" is defined in Webster's New International Dictionary as follows:

* * * 1. A building and paving material *made from clay* (either pure or mixed, as with sand, lime, etc.) by molding into blocks while moist and hardening it in the sun or by fire. Sun-dried brick, used extensively in ancient times, and still made in warm countries, is much less durable than baked or burned brick. (See *Clay.*) Brick is burned either in a kiln or in stacks or "clamps." The ordinary red color is due to the presence of iron compounds which are converted into the red oxide. This color may be altered to a greenish blue by a heat high enough to vitrify the surface, or into brown or yellow by mixing lime or magnesia with the clay.

2. An individual molded block *of the above material,* usually rectangular. The average dimensions of an English brick may be taken as 2⅝ x 4⅜ x 9 inches; of an American brick, 2½ x 4 x 8 inches. [Italics ours.]

Substantially the same definition of "brick," so far as the issue here is concerned, is contained in the Encyclopaedia Britannica, Funk & Wagnalls New Standard Dictionary, Century Dictionary and Encyclopedia, Knight's American Mechanical Dictionary, and the New International Encyclopedia, 2d edition, which authorities were cited and quoted from in the trial court's decision.

We have been unable to find any definition of the term "brick" by any lexicographer which includes so-called "glass brick" or "glass blocks."

So far as we have been able to ascertain from the tariff history of the provisions for brick, so-called "building or structural brick" has always been considered by the Congress as an earthy product. See Summary of Tariff Information, 1920, pp. 135, 136; Summary of Tariff Information, 1921, p. 256; Summary of Tariff Information, 1929, volume 2, pp. 2233, 2234.

There is nothing either in the definitions hereinbefore referred to or in the legislative history to indicate that the Congress intended to include in the provision for all other brick, not specially provided for, contained in paragraph 201 (b), *supra*, glass articles such as those here involved. Accordingly, we are unable to hold on the record presented that the trial court erred in overruling appellant's protest.

In its decision, the trial court apparently relied to some extent upon the fact that in a trade agreement between the United States and Czechoslovakia (T. D. 49458, 73 Treas. Dec. 454) paragraph 230 (d), *supra*, was modified, "pressed building blocks or bricks" being specially provided for therein.

It should be understood that, in holding that the involved articles were not intended by the Congress to be included within the provision for all other brick, not specially provided for, contained in paragraph 201 (b) *supra*, our conclusion is in no way affected by the provisions of the aforesaid trade agreement which became effective subsequent to the importation of the involved articles. See *United States* v. *Klytia Corporation*, 29 C. C. P. A. (Customs) 109, C. A. D. 178.

The judgment is *affirmed*.