UNITED STATES *v.* FUNG CHONG CO. (No. 4524)[1]

[1] C. A. D. 342.

United States Court of Customs and Patent Appeals, July 9, 1946

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Sybil Phillips*, special attorneys, of counsel), for the United States.
*Lawrence, Tuttle & Harper* (*Lawrence A. Harper* of counsel) for appellee.

[Oral argument April 4, 1946, by Mr. Weeks and Mr. Tuttle]

Before GARRETT, Presiding Judge, BLAND, HATFIELD, JACKSON,
and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, C. D. 937, sustaining the protest of the importer that two items of merchandise comprising "2 Cases Dried Sweet Kumquat Orange in jar" and "10 cases Pres. Kumquat Orange in jar" were dutiable at 1 cent per pound under paragraph 743 of the Tariff Act of 1930 as oranges and overruling the action of the Collector of Customs who classified and assessed the merchandise as prepared or preserved fruits at the higher rate of duty provided for in paragraph 752 of such act or as it was modified by the trade agreement with France, T. D. 48316.

It does not clearly appear from the record whether the merchandise was assessed by the collector at 35 per centum ad valorem under paragraph 752 or at 25 per centum under the provisions of the trade agreement.

The Tariff Act of 1930 provides:

PAR. 743. Lemons, 2½ cents per pound; limes, in their natural state, or in brine, 2 cents per pound; oranges, 1 cent per pound; grapefruit, 1½ cents per pound.

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem; fruit pastes and fruit pulps, 35 per centum ad valorem; candied, crystallized, or glacé apricots, figs, dates, peaches, pears, plums, prunes, prunelles, berries, and other fruits, not specially provided for, 40 per centum ad valorem; *Provided*, That a mixture of two or more kinds of candied, crystallized, or glacé fruit shall bear the highest rate of duty applicable to any of the components.

Paragraph 752 as modified by the trade agreement with France, T. D. 48316, provides:

| Tariff Act of 1930; paragraph | Description of articles | Rate of duty |
|---|---|---|
| 752 | Candied, crystallized, or glacé apricots, figs, dates, peaches, pears, plums, prunes, prunelles, berries, and other fruits not specially provided for. | 25% ad val. |

The trial was begun in California and after taking testimony there, the case was continued and transferred to New York where additional witnesses were heard. After hearing all the witnesses and after recounting and analyzing their essential evidence in detail, the court held that appellant had "failed to prove that there is any commercial usage of the term 'orange' unqualified by some prefix or that there is any definite, uniform, and general commercial meaning of the term 'orange' throughout the United States."

Under the circumstances this court may not properly reverse the judgment of the trial court unless we are convinced that the judgment is against the weight of the evidence. *Balfour, Guthrie & Co., Ltd.* v. *United States,* 32 C. C. P. A. (Customs) 144, C. A. D. 300.

The Customs Court has heretofore held that the common meaning of the word "oranges" included kumquats and that preserved kumquats were therefore dutiable under the provisions of the statute hereinbefore recited as applied to oranges. *Quong Lee & Co. et al.* v. *United States,* 10 Cust. Ct. 23, C. D. 716. The record in that case was relied upon by the importer in the instant case and was received in evidence without objection.

Appellant concedes that kumquats are within the common definition of the term "oranges" as used in paragraph 743, and the sole question presented here for determination is whether appellant has sustained its burden of proving that at and prior to the passage of the Tariff Act of 1930, the word "oranges" had a definite, uniform, and general meaning in the trade and commerce throughout the United States that differed from the common meaning of the word in that it excluded kumquats.

The trial court properly ruled that in customs cases the common and commercial meaning of a word used in the tariff act "are presumed to be the same unless it is otherwise shown; that the burden of proving commercial designation is upon the party who alleges it, and that commercial designation must be shown to be definite, uniform, and general throughout the United States at the time of the enactment of the tariff act."

The rule as it has been established "was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted." *Jas. Akeroyd & Co. et al* v. *United States,* 15 Ct. Cust. Appls. 440, T. D. 42641.

Appellant introduced in evidence the testimony of seven witnesses each of whom testified to the best of his knowledge and established among other things that he had been in the business of buying and selling oranges in wholesale quantities to jobbers or dealers in various parts of the country at or prior to the time of the enactment of the

Tariff Act of 1930. Most of the witnesses testified that the word "oranges" had a meaning in the trade and commerce of the United States that differed from the common meaning and some of them pointed out that if they received an order for oranges they would not fill it by delivering kumquats.

Taken as a whole, the weight of the evidence clearly establishes that at or prior to the enactment of the Tariff Act of 1930 the word "oranges" defined in the commerce of the United States a kind of citrus fruit that was comprised of numerous varieties and that the two principal varieties, the navel and the Valencia, constituted together the major portion of the annual production of the crop. Other oranges were commercially designated according to their variety as Mediterranean sweets, Javas, Homosasas, seedlings, ruby bloods, Malta bloods, Parson Browns, Hamlins, etc.

The importer urges here, "The basic difficulty with the Government's attempt to prove commercial designation is that the term 'orange' is not used by the trade. There are so many varieties of oranges that they have to specify the type of orange."

In support of its holding that appellant had failed to prove there is any commercial usage of the term "orange" unqualified by some prefix, the court below correctly quoted the following excerpts from testimony given on cross examination by witnesses for the Government:

By SAMUEL H. KELLY—

X Q. Now, just to get this straight, to see if my notes are correct, navel oranges are November to May or June?—A. Yes.

X Q. Valencia oranges are April to November?—A. That is correct.

X Q. Suppose I ordered my oranges in May or April. What would I get?— A. Well, you would get ordinarily navels, because there would be greater volume at that time, but when there is an overlapping of seasons you would ask the jobber what he wanted, whether he wanted Valencias or navels.

X Q. So oranges in the trade and commerce do have a prefix?—A. Oh, yes, sure.

X Q. I mean they need the prefix to be identified?—A. Certainly.

By JOSEPH MOYES—

X Q. In buying—if I sent you an order for oranges, what would you deliver to me?—A. It would all depend on the season of the year that you sent the order.

X Q. In May?—A. If you were an intelligent retailer or jobber and you sent an order in May, you would specify Valencia oranges or navel oranges.

X Q. But you say the trade has an understanding of the term "orange," as I understood it, so I am just using the understanding of the trade, oranges.—A. But the intelligent retailer will ask for Valencias or navels. He will not come in and ask simply for oranges. He will ask for Valencia oranges or navel oranges.

X Q. And "orange" itself as a term would not have an adequate or sufficient meaning to the trade?—A. Well, we wouldn't know, if a man came in and asked for oranges, we wouldn't know what variety he wanted unless he mentioned Valencias or navels, if the two varieties were in the market at the same time.

The following pertinent evidence was correctly summarized by the trial court—

The case was transferred to New York and the Government called Frank J.

Cuneo, president of G. B. Raffeto, Inc., manufacturers of fruit preserves and canned fruits. He testified that "orange" was a class of fruit; that there were many kinds of oranges; that kumquat was one of them; that he never used the term "orange" alone but asked for Valencia oranges or seedless oranges or kumquat oranges, depending upon the type orange he was interested in; that he never bought or sold oranges by the word "orange" alone except where the supplier happened to know what type he always ordered.

The testimony of Fred H. Howard in the case incorporated as a part of the evidence in this case and relied upon by the importer, is to the effect "that commercially as well as commonly a kumquat falls within the general classification of 'orange'."

One of the witnesses for the Government stated that there are "500" different varieties of oranges and it stands to reason that it would not be necessary for Congress in drafting the statute to specially provide for each variety in order to establish its intent to include all varieties within the provision for oranges. Of course, a kumquat is different in many respects from the common variety of oranges, such as navels or Valencias, but it does not follow from that fact that Congress did not intend to include all varieties of oranges in the one classification for tariff purposes.

It is true, as pointed out by the court below, that although certain witnesses for the Government testified that the term "orange" had a commercial meaning different from its common meaning, they did not inform the court as to such commercial meaning. The most that those witnesses testified to was that the term "kumquat" was excluded from the commercial meaning of the term "orange."

In the absence of any testimony as to the commercial meaning of the term "orange," the statement of the witnesses that the involved merchandise was excluded from that term is insufficient to prove commercial designation. See *Jas. Akeroyd & Co. et al.* v. *United States, supra; Acker* v. *United States,* 1 Ct. Cust. Appls. 328, T. D. 31431; *Lamont, Corliss & Co. et al.* v. *United States,* 16 Ct. Cust. Appls. 488, T. D. 43224; *United States* v. *Schoemann & Mayer,* 17 C. C. P. A. (Customs) 349, T. D. 43778; *Passaic Worsted Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 459, T. D. 43916, and authorities therein cited; *United States* v. *Armand Schwab & Co., Inc., et al.,* 30 C. C. P. A. (Customs) 72, 78, C. A. D. 218.

In the interpretation of the tariff act the function of the court is to ascertain and carry out the intent of Congress. One of the rules to be followed in discovering that intent is the rule of commercial designation. It.was established almost a century ago and has been uniformly adhered to by all the courts down through the years. It has been described by the courts as a wise rule "often claimed in customs litigation and rarely established," *Jas. Akeroyd & Co. et al.* v. *United States, supra.*

The suggestion has been made that the rule is too technical in scope and therefore should be modified by relaxing the requirements as to the character and extent of the required proof. As the rule now stands and has stood for a century, any lawyer or judge knows what those requirements are and may predict with reasonable certainty the outcome of the application of the rule. To relinquish those requirements at this late date would open up a new line of judicial interpretation. In our opinion no basis calling for a revision of the rule has been established.

Appellant in its assignment of errors alleged that the Customs Court had erred in not holding that the preserved as well as the dried kumquats here involved were dutiable under paragraph 752 or under that paragraph as amended by the trade agreement with France. That question was not mentioned by either party in its oral argument or its brief on appeal. Apparently it was not argued by either side in the court below.

The Government has confined its argument here to the sole question of commercial designation and has not relied on any other assignment of error as a ground of reversal. Under the circumstances the appeal as to assignments of error other than the one that was argued before this court is deemed to be abandoned by the Government and therefore need not be considered. *United States* v. *Joseph G. Brenner Co.*, 19 C. C. P. A. (Customs) 105, T. D. 45243.

The judgment of the United States Customs Court is accordingly *affirmed*.

### DISSENTING OPINION

BLAND, Judge: The instant merchandise, dried sweet or candied kumquats in jars, has been classified by the trial court under paragraph 743 as oranges at 1 cent per pound. (Candied fruits are provided for ad valorem.)

The trial court had held in *Quong Lee & Company et al.* v. *United States*, 10 Cust. Ct. 23, C. D. 716, that such merchandise was within the common meaning of the term "oranges," no question of commercial designation having been decided. In the instant case the Government sought to prove and, I think, did prove that kumquats such as those at bar were not oranges in the tariff sense according to the meaning of the term in trade and commerce.

After a too meager discussion of the record and without referring to important testimony relied upon by the Government, the majority say:

It is true, as pointed out by the court below, that although certain witnesses for the Government testified that the term "orange" had a commercial meaning different from its common meaning, they did not inform the court as to such commercial meaning. The most that those witnesses testified to was that the term "kumquat" was excluded from the commercial meaning of the term "orange"

In the absence of any testimony as to the commercial meaning of the term "orange," the statement of the witnesses that the involved merchandise was excluded from that term is insufficient to prove commercial designation. See *Jas. Akeroyd & Co. et al.* v. *United States, supra; Acker* v. *United States,* 1 Ct. Cust. Appls. 328, T. D. 31431; *Lamont, Corliss & Co. et al.* v. *United States,* 16 Ct. Cust. Appls. 488, T. D. 43224; *United States* v. *Schoemann & Mayer,* 17 C. C. P. A. (Customs) 349, T. D. 43778; *Passaic Worsted Co. et al.* v. *United States,* 17 C. C. P. A. (Customs) 459, T. D. 43916, and authorities therein cited; *United States* v. *Armand Schwab & Co., Inc., et al.,* 30 C. C. P. A. (Customs) 72, 78, C. A. D. 218.

The majority have not stated certain positive statements in the evidence which distinguishes the commercial meaning from the common meaning.

At first blush I was of the impression, from statements made in oral argument, that there was a failure of proof in respects other than that indicated in the above-quoted statement, which statement is the basis of decision by the majority. Upon review of the record I find that from the testimony of the Government's eight witnesses (the importer presented none) proof of commercial designation was sufficiently established.

It would lengthen this opinion too much to discuss all of the testimony in detail, but I think certain features of it should be pointed out. One witness, Samuel H. Kelly, with the California Fruit Growers Exchange for 30 years, stated that he sold oranges, grapefruits, and lemons all over the United States and Canada to jobbers and wholesalers. He enumerated his dealings in the markets of Los Angeles, San Francisco, Portland, Seattle, Spokane, Butte, Salt Lake City, Denver, Des Moines, Minneapolis, Chicago, St. Louis, Kansas City, Baltimore, New York, Boston, Philadelphia, and Cincinnati, and mentioned that there were 55 different cities involved. He also testified that he had sold kumquats in small quantities and identified Exhibit 1 as a twig containing four kumquats. He stated in substance that he was familiar with the trade's understanding of the term "oranges." He stated that he would not call Exhibit 1 an orange, that there was a difference in the common meaning and the commercial meaning of the term "orange," and his testimony is clearly to the effect that when oranges are bought and sold, throughout his trade experience, they are sold as certain kinds of oranges. He stated that, in his dealings, if he should get an order from a customer for oranges a delivery of kumquats would not be acceptable as filling the order. He said he would not call a kumquat an orange, and upon being asked whether mandarins and tangerines were included in the commercial definition of an orange stated positively that they were not. He stated that "they are never referred to in commerce as oranges. They are referred to as tangerines, mandarins, or onsus, *or whatever they happen to be,*" and that they were not referred to in trade as "mandarin oranges" or as "tangerine oranges" and that "if a jobber gave

me an order for a car of mandarins he wouldn't say a car of mandarin oranges. He would say a car of mandarins, or a car of tangerines"— that is the way they are referred to in the trade.

He was asked to state the difference between a kumquat and an orange. He answered:

Well, the eating quality there is no similarity whatsoever. An orange, the pulp is palatable and sweet in taste. The pulp in a kumquat is very sour, and I couldn't imagine anybody eating them out of hand, but you can eat oranges, of course, out of hand, because they are sweet and palatable, but the kumquat, the pulp of it, is very sour. As a matter of fact, the peel is sweeter than the pulp is.

Other witnesses further stated the difference between a kumquat and an orange and testified, as is stated in the majority opinion, that there was a difference between the common meaning and the commercial meaning of the term "oranges," and that the commercial meaning did not include a kumquat. Joseph Moyes, in answer to a question relating to tangerines, said that while the dictionary may define it as an orange "it is not known to the trade as an orange because it is known as a tangerine." The same is true of kumquats.

The various witnesses were from several parts of the United States.

On the first question raised by the appellee as to whether or not the proof would justify a finding that the meaning proposed by the Government was general, definite and uniform throughout the United States, although it has shown by this witness, Kelly, alone, that that meaning prevailed in 55 widely scattered parts of the United States and Canada, southern California, and elsewhere, *the appellee contends that it did not include Texas and Arizona,* orange producing areas. Surely it cannot be contended that when witnesses of such vast experience, dealing throughout the length and breadth of the nation, testify as to the meaning of a term in such an unusual volume of trade this testimony should be rejected on the ground that it is local and partial. It is possible (and I am glad to say that the majority have not so found) that one attempting to prove commercial designation, where nothing to the contrary appears, is required to produce a witness from every State and every part of every State throughout the United States in order to make a *prima facie* case? The majority have not ruled on this point.

While I have found no express authority for the holding, it would seem to me that if a showing is made as to the custom in the trade in the principal markets of the country it would be sufficient in the absence of any showing to the contrary.

An examination of the record discloses that the Government went to great pains to seek witnesses throughout the United States to testify as to the meaning of the term "oranges," and it seems obvious that in no law suit would it be practicable to produce witnesses showing what every small concern throughout the United States styled its

goods. Surely the great array of testimony produced by the Government, none being introduced by the importer, should be held to make a *prima facie* case on the issue of generality throughout the country. I have never seen a record so replete with evidence of sales practices in so many places in the United States. If there were substantial communities throughout the United States where the trade nomenclature differed from that of most of the country surely the importer would have found them and countered the very strong *prima facie* case made by the Government.

I conclude that the testimony was sufficient upon this issue.

The next issue, relating to the character of proof required, is of vastly more importance than the one just discussed.

It will be noticed that the majority has cited certain authorities purporting to be in support of some of the statements in the above quotation from the majority opinion. Without taking time to analyze those cases here, they do not support some of the statements made in the above quotation. Some of the cases support a portion of what is said in the above statement, although those cases did not involve the same facts as are involved here. There is plenty of proof in this record that clearly distinguishes the commercial meaning from the common meaning of the term "oranges," and that proof ought to be frankly stated. I will not undertake to state it all but will refer to some of it. The majority opinion states that "The most that those witnesses testified to was that the term 'kumquat' was excluded from the commercial meaning of the term 'orange.'" This statement is erroneous. The witnesses went much further than that as I shall in part and very briefly point out.

I think this court has gone too far in the way of restrictive rules applied to proof of commercial designation and I wish to state here that in some of those decisions which I think are the most offensive in this regard I participated and I was the author of one of them.

We have come to a point where it seems almost impossible, if not entirely so, to make a case of commercial designation which will stand up in the customs courts if it is questioned by the opposing party. Few cases, in my judgment, in all the history of the application of the rules relating to proof of commercial designation are more illustrative of the importance of relaxing the rules than is the instant case. Knowing what oranges are and what kumquats, tangerines, and mandarins are, it simply doesn't make sense to hold that dried sugared kumquats in cans are dutiable as oranges at 1 cent per pound where there is a specific provision in the statute for "candied, crystallized, or glacé fruits, not specially provided for."

We have no question here of weighing the evidence. It is all one way, although sometimes somewhat confusing by reason of the peculiar attitude taken by the trial judges in sustaining objections to

questions. But it is our duty in determining questions of this character to use common sense and common understanding and to regard the evidence, if pertinent, as supporting our knowledge on the question. I am not willing to decide this question on the matter of judicial knowledge of what are or what are not oranges and kumquats, although I urge that our knowledge in this connection must be used in a sensible way in evaluating the evidence.

I have an abundance of authority for this suggestion. In *Robertson* v. *Salomon*, 130 U. S. 412, at page 415, in reversing the court below in the exclusion of certain evidence, Justice Bradley, under circumstances quite similar to those at bar, said:

* * * We think, therefore, that the court erred both in its charge and in the exclusion of the evidence offered, especially as, *without any evidence, and with the common knowledge which we all possess, the court might almost have been justified in directing a verdict for the defendant.* [Italics mine.]

The subject of discussion was white beans.

It is quite interesting to note that Chief Justice Fuller, in *Sonn* v. *Magone*, 159 U. S. 417, discussing the *Robertson* case, *supra*, quoted the paragraph I have quoted above and then said (page 423):

* * * In this case [also involving beans] the court was not only *almost* but altogether justified in such direction, and while there are expressions in that opinion which have been laid hold of as qualifying the general rule as to judicial knowledge, they must be treated as induced by the state of the record, and are not to be regarded as having that effect. [Italics mine.]

So we should look upon the proof offered in the light of common sense and common understanding, and I am thoroughly convinced, from what I have the right to take knowledge of and from the abundance of proof, which is sufficient without judicial knowledge, that the imported instant merchandise should never be classified as oranges and assessed at 1 cent per pound.

If the proof in this case is rejected I do not know how an importer or the Government would ever have the temerity to attempt to make the effort again, and, judging from the trial court's decision, relying as it does on this phase of the case on the decision in *Passaic Worsted Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 459, T. D. 43916, it becomes important to consider whether that case and one other here discussed have gone too far in the way of restricting the rules relating to proof of commercial designation.

As before stated, however, the trial court did not quote or comment upon many phases of the evidence in this case that were not covered by the *Passaic Worsted* case or any other case here cited.

The question of the form of proof required to constitute proper proof of commercial designation requires a discussion of decisions that I feel would take more space than I would like to devote to it here. But since I have made the point that this court, with my full

approval and consent, has so restricted the doctrine that it is out of harmony with what I now believe should be the controlling law on the question, I think it necessary to mention briefly certain decisions dealing with the subject.

I start the discussion with one of the earliest leading cases found on the question, *Two Hundred Chests of Tea; Smith, Claimant*, 22 U. S. 430 (March 1824). In that case, opinion by Justice Story, certain fundamental principles were laid down with reference to the commercial meaning of terms, which principles have been followed throughout the years: (1) "Congress spoke in the language of commerce"; (2) "The true inquiry" is whether the imported article "is known, and bought and sold, and used, under the denomination" claimed; (3) *The legislature "did not suppose our merchants to be naturalists, or geologists or botanists."*

The meaning of the term "sugar" and the difference between sugar and syrup were involved in *U. S.* v. *112 Casks of Sugar*, 33 U. S. 277 (July 1834). In discussing the testimony the court pointed out that in ascertaining the character and designation of the goods in question a pure question of fact was involved and the nature of the inquiry admitted of *nothing more than expressions of opinion*, which resulted, as is generally the case in such inquiries, in a difference of opinion. It was further held that the court must weigh the evidence. The court called attention to the fact that the testimony of scientific witnesses on the scientific meaning of the term had to yield to the commercial meaning. It might be added here that the decision not only supports the proposition that there is often a distinct difference in the commercial meaning from that of the common meaning of a term but that there is a difference at times between the scientific meaning and the common meaning. And let it be remembered that the testimony of a fully qualified witness on commercial designation *is to be regarded as that of an expert* and the opinions of an expert are always accepted in any form in any case. However, there is an abundance of testimony in the instant record that under no stretch of the imagination could be regarded as opinion evidence.

It is interesting to note the development of the rules applicable to proof of commercial designation in various Supreme Court cases, among which might be cited the following: *Elliott* v. *Swartout*, 35 U. S. 137; *Arthur* v. *Cummings*, 91 U. S. 362; and *Cadwalader* v. *Zeh*, 151 U. S. 171. Many others decided by the Supreme Court throughout the last century could be added to those already mentioned, and the rules laid down therein were followed by the Circuit Courts and the Circuit Courts of Appeals for many years. For example, see *Sidenberg et al.* v. *Robertson*, 41 Fed. 763, and *In re John Hope & Sons Engraving & Manufacturing Co.*, 100 Fed. 286. In no place have I

found an expression which outlaws testimony on this question because the witness has expressed an opinion.

The first case in this court on this question, *United States* v. *Kwong Yuen Shing*, 1 Ct. Cust. Appls. 14, T. D. 30773, which turned upon the question that the proof did not show that a commercial designation was definite, uniform, and general, cited a leading Supreme Court, *Maddock* v. *Magone*, 152 U. S. 368, as controlling.

In *Park & Tilford* v. *United States*, 1 Ct. Cust. Appls. 34, T. D. 31006, the court rejected the testimony because it did not follow that at and prior to July 24, 1897, or at any other time, there was or had been any definite, uniform, and general trade designation of cut-glass bottles *"which excludes such as are before us * * *."* (Compare this rule with that laid down by the majority.)

In *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T. D. 31431, the court said:

· The further requisite, however, is necessary in assigning to a phrase a commercial limitation or application that it must be proven not alone that the imported merchandise is not classed therewithin, but there must be assigned by proof to that phrase a scope and meaning which is clearly, definitely, and uniformly understood throughout the United States *which includes some other merchandise and excludes the imported merchandise and excludes the imported merchandise.* [Italics mine.]

There so-called opinion evidence was acceptable.

I will pass over all other cases which might reflect at all upon the question as to whether a witness' stating that the commercial meaning of a term excludes or includes an imported article is an opinion and not proper proof and come next to this court's opinion (with which I, at the time, agreed) in *Passaic Worsted Co. et al.* v. *United States, supra.* There the court stated in substance that where a witness is asked if certain articles belong within a certain class the answer he gives will simply be his opinion "and the true facts may not be readily available on cross-examination."

In *United States* v. *Schoemann & Mayer*, 17 C. C. P. A. (Customs) 349, T. D. 43778, which opinion I wrote and with which opinion the majority of the court were in agreement (Hatfield, J., concurred in the conclusion), it was pointed out that the testimony in that case, among its faults, attempted to express the opinion that the toys there involved belonged to a class of merchandise sold at wholesale in 1922 which was commercially considered as toys. This case and the *Passaic Worsted* case, appearing in the same volume, do not support the above-quoted statement of the majority in the instant case. The evidence there was not of the same character as the evidence at bar.

Just here it should be pointed out that prior to the time I, for the court, wrote the opinion in the *Schoemann & Mayer* case, the court, in a decision written by Judge Hatfield, in *Lamont, Corliss & Co. et*

*al.* v. *United States*, 16 Ct. Cust. Appls. 488, T. D. 43224, at page 497, pointed out the defects of certain testimony by saying:

* * * Nor was there any evidence that the imported article was included within the trade term "toys." The evidence of the Government in that case [referring to *United States* v. *Globe Overseas Corporation*, 13 Ct. Cust. Appls. 10, T. D. 40849] was precisely what counsel for importers erroneously, we think, claim the evidence is here. The evidence here is not confined to the trade designation of a domestic stearic acid. *It goes farther, and tends to establish that the involved product is excluded from that class of merchandise designated in the trade as stearic acid.* *Furthermore, the evidence in this case meets the issue squarely.* [Italics added.]

It is probable that Judge Hatfield concurred in the conclusion in said *Schoemann & Mayer* case because it tightened up the rule that he had laid down there and, if so, he was right.

In the *Passaic Worsted* case, *supra*, the court attempted to state the character of testimony which would be proper to show commercial designation and, following the *Shoemann & Mayer* case and others, held that to testify that an article belonged within a certain class was an opinion, and the witness could not be properly cross-examined.

While the *Passaic Worsted* case was afterwards often cited, the principle there announced on the instant point apparently was never controlling. In this court's decision in *Stephen Rug Mills* v. *United States*, 32 C. C. P. A. (Customs) 110, C. A. D. 293 (written by Jackson, J.), the *Passaic Worsted* case was there cited on a point not herein involved, and the court, addressing itself to the question of proof of commercial designation of the term "imitation oriental rugs," stated:

* * * Furthermore, it was admitted from the beginning by appellant that the common designation differed from the commercial designation, which of course must mean that the commercial designation of the goods differed from the common designation. Since appellant proved that the imported merchandise was bought and sold at wholesale and was uniformly, definitely, and generally known as "imitation oriental rugs, wholly or in cheif value of cotton," his case conformed to the principles laid down in the *Passaic Worsted* case, *supra*, as well as the other cases concerning commercial designation.

The instant record affords plenty of proof involving a premise which is the converse of the above quotation. Kumquats were never bought or sold, or known in the trade, as oranges.

In *United States* v. *Tausig & Pilcer, Chas. Redden*, 18 C. C. P. A. (Customs) 421, T. D. 44681, the majority of the court, where there was no conflict in the evidence, in sustaining certain proof of commercial designation of certain leather, said:

While this testimony might have been more precise and definite, we conclude that, in the absence of any showing to the contrary, it establishes fairly well that at and just prior to the enactment of the Tariff Act of 1922, the leather which was commercially designated as bag, strap, and case, was leather of the bovine species, and was limited to such leather as was used for heavy bag and suit cases, and straps therefor. *Seal leather, pig and "elefant" leather were not included within such designation.* [Italics mine.]

In *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732, the court quoted the following from the case of *Hampton, Jr. & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, T. D. 40695:

In order to have their goods admitted free, the appellants must establish that they are "shingles." Two Hundred Chests of Tea, 9 Wheat. 428 [437]. Or importer might establish that the word "shingles" had a well-known, uniform, and general trade meaning, and *that it included the merchandise in question. Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499. [Italics mine.]

It will be noticed that what was required to be proved with respect to the issue I am now discussing is that the trade meaning "included the merchandise in question." The same rule would, of course, apply with reference to excluding it.

The Board of General Appraisers, in *Knauth* v. *United States*, 1 Ct. Cust. Appls. 422, T. D. 31499, made the following holding, and this court made no criticism thereof and concurred in the opinion of the board upon that issue:

Many witnesses were examined in this proceeding, and the Government has endeavored to prove by their testimony that the term "lithographic print" had a well-known, uniform, and general trade meaning, and that it included articles of the kind here in question. * * *

No question as to the evidence being the opinion of witnesses as to whether an article was excluded or included within the commercial meaning of a term was there stressed.

As a deduction from the weight of authority in the foregoing cited cases, it is my view that there is no justification for the holding of the majority as to the effect to be given certain parts of the Government's testimony as being opinion evidence and therefore objectionable.

I think we should frankly modify the *Schoemann & Mayer* case and the *Passaic Worsted* case, and others, and hold that where such testimony is not disputed or where the record strongly supports it, it has probative value and might be given controlling effect.

Moreover, I think, aside from this question, there was plenty of evidence, not quoted or discussed in the majority opinion, which, standing undisputed, is clearly convincing that in commerce kumquats were never known as "oranges" or referred to by that name and that the scientific or botanical meaning of the term "orange" under such circumstances should not be controlling.

Although I am in doubt as to whether the question is sufficiently specifically raised in the Government's assignment of errors, it occurs to me that initially it should have been held that candied, canned kumquats were not specially provided for as oranges. (See *supra* as to judicial knowledge.)

While I conclude that the Government has made a case of commercial designation, it is obvious that the proof could have been more definite and complete in some respects. This usually is true in any case. The Government was handicapped, as is shown by the record,

by the different views of the lawyers and the court with respect to the proper manner of proving commercial designation. Unquestionably, judging from the positive statements of the witnesses in the record, in determining the meaning of oranges and whether or not the term "oranges" included kumquats, it was proper for the Government to have further introduced more testimony with respect to whether or not in commerce, they had ever heard a kumquat called an orange. There is considerable testimony to that effect in the record. (See *Lamont, Corliss & Co. et al.* v. *United States, supra.*)

In my opinion, the judgment appealed from should have been reversed.

HATFIELD, Judge, concurring:

It is my view that all of the facts of importance in this case have been stated in the majority opinion, and I concur in all that is said therein.

Some reference is made in the dissenting opinion to the fact that in determining the issue in a case of this character it is the duty of the court to use common sense and common understanding. The observation is not a new one, but in order to be legally applicable it should be compatible with well-established principles of law.

In my opinion the Government has wholly failed to prove that the term "kumquat" is not within the common meaning of the term "orange." No witness testified as to the difference between the commercial meaning and the common meaning of the term "orange." If any of them knew such difference, they did not so state nor were they interrogated on that point. The mere fact that a species of orange is known as "kumquat" does not take that species out of the common meaning of the term "orange" any more than an orange, which is generally known as the "Valencia," is taken out of the common meaning of the term "orange." The proof necessary to establish commercial designation has been accepted not only by this court but by every other court throughout the history of tariff legislation.

The statement is made in the dissenting opinion by my esteemed associate, Judge Bland, that tangerines, for example, are not included in the commercial designation of the term "orange." It may be observed, however, that, according to the lexicographers, tangerines are a species of orange.

In the case of *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, 371, T. D. 43092, this court, without dissenting views from any member, made the following statement:

Without intending to give a comprehensive definition of the rule, it may be said, however, that, if an article is not within the common meaning of a tariff term, in order to bring it within that term by proof of commercial designation, where such proof is limited, as it is here, to the trade term by which the article is bought and

sold, it must be shown by a preponderance of the evidence that it was bought and sold or known in the trade and commerce of the United States, uniformly, definitely, and generally by the term contained in the statute. *United States* v. *Walter*, 4 Ct. Cust. Appls. 95, T. D. 33371; *Seligmann* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336; *Hampton, Jr. & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, 496, T. D. 40695.

If, however, an article is within the common meaning of a tariff term, that is, if it is a species embraced by the generic tariff term, the mere fact that it was not known in the trade by the precise tariff term would not affect its classification. *United States* v. *Motor Car Equipment Co.*, 3 Ct. Cust. Appls. 77, T. D. 32355; *Witcombe, McGeachin & Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 84, T. D. 40022, and cases cited therein; *United States* v. *Lilly & Co.* and *Parke, Davis & Co.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

For the reasons stated, I most heartily concur in the views expressed in the majority opinion.